O. M. CAMPBELL, DOING BUSINESS AS CAMPBELL AUDITING
COMPANY, APPELLANT, V. DOUGLAS COUNTY, APPELLEE.

7 N. W. (2d) 764

FILED JANUARY 29, 1943.   No. 31485.

*Abrahams & Frenzer*, for appellant.

*James T. English* and *Oscar T. Doerr, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

SIMMONS, C. J.

This is a suit to recover an amount alleged to be due for services rendered as an accountant and auditor. The defendant demurred to plaintiff's petition. The demurrer was sustained. Plaintiff elected to stand on his petition, and the action was dismissed. Plaintiff appeals. We reverse the decision of the trial court.

On November 12, 1941, a grand jury, then in the performance of its statutory duties in Douglas county, recommended to the board of commissioners of defendant that it considered necessary a complete investigation and verification of various matters pertaining to the records of officials

of defendant county, and that plaintiff, a competent and qualified public accountant and auditor, be employed to conduct such investigation and verification. The board of defendant were not personally able or qualified to make such an investigation, and such an investigation had not been made by the auditor of public accounts of the state nor by the county comptroller of defendant.

That day the defendant, by its board of commissioners, acting upon the report and recommendation of the grand jury, entered into a written contract with the plaintiff who agreed to make a complete investigation and verification of the records of such officials as might be requested by the grand jury, or as directed by the attorney general after the adjournment of the grand jury, and to report with respect thereto to the defendant's board of commissioners, to the attorney general and to the judges of the district court of defendant county not later than March 15, 1942. A per diem compensation for plaintiff and his assistants was stipulated. The defendant agreed to make available a maximum of $10,000 "appropriations or budgets" for the purpose of carrying out the request of the grand jury, and compensating the plaintiff upon the fixed per diem basis. $2,500 was to be payable out of the moneys appropriated up to and including December 31, 1941. The defendant agreed to include in its 1942 budget such sums, up to the maximum of $10,000, as may not have been earned and paid on the service to December 31, 1941.

Upon the date the contract was made there was, and thereafter remained, an unexpended and unencumbered balance of $3,690 in defendant's general fund, which had been appropriated in the 1941 budget for miscellaneous activities, which sum was available for and subject to the payment of plaintiff's claims for the services rendered in 1941 involved in this litigation.

Thereafter the plaintiff entered upon and fully performed his obligations under the contract. Plaintiff, subsequent to the date of the contract, furnished defendant with a list of his staff members and their compensation, he agreed to de-

duct from their compensation taxes due the defendant, and obtained a statement from them that they understood that they were not employees of the county or entitled to workmen's compensation from the county, and furnished a bond to cover any failure on his part to perform.

Subsequently for services rendered up to and including December 20, 1941, plaintiff filed itemized claims for services rendered in compliance with the contract totaling $1,-994.37, which claims as filed were charged against said balance of $3,690. These claims were true and correct and covered services rendered in the auditing of the books and records of the defendant's treasurer. These claims were for the agreed and fair and reasonable value of the services rendered during the period covered by the claims. The defendant's board on December 23, 1941, disallowed the claims. Plaintiff appealed to the district court from the disallowance of the claims.

Notwithstanding its disallowance of the claims defendant treated the contract as valid and in force. On January 13, 1942, it adopted the statutory budget, and included therein and appropriated the sum of $7,500 for payment for this special audit and investigation. Plaintiff continued his performance and on March 14, 1942, delivered his complete report in writing to the board, the attorney general and the judges of the district court. The defendant received, accepted and retained the report of the plaintiff made on March 14, 1942.

These facts, alleged in the petition and admitted to be true by the demurrer, are the basis of plaintiff's claim of a right to recover the sum of $1,994.37, and upon which his claim that defendant is estopped to deny plaintiff's right to recover is based.

The defendant takes the position that the contract is void because, (1) the services to be performed by plaintiff, a private person, are services which the law imposes upon the state auditor and the county comptroller, and (2) the contract is an attempt to evade the provisions of the budget and other laws intended to prevent expenditure of or

contract to expend moneys not available when the contract was made.

Plaintiff's position is that under the provision of section 26-105, Comp. St. Supp. 1941, the defendant has express authority to contract for the work covered by the instrument in question, and likewise that it has an implied authority to do so in order that the commissioners may properly perform the duties of their office. The above section specifically gives a county board power "To manage the county funds and county business *except as otherwise specifically provided*," and "To examine and settle all accounts against the county, and *accounts concerning receipts and expenditures of the county*." (Emphasis supplied.) Defendant here does not question the power of the board to require that the audit and investigation be made, but takes the position that the law has imposed the performance of these duties upon the state auditor and county comptroller, and that the defendant is without authority to contract with a private person to perform tasks which the law requires be performed by a public official.

The precise question then is, has the legislature required that these officials make the investigations and audits here involved, so as to exclude the employment of other persons to do that work?

The general duties of the state auditor are set out in section 84-303, Comp. St. 1929, and section 84-304, Comp. St. Supp. 1941. An examination of the statutes clearly indicates a legislative intent that this official is primarily charged, in his field, with service to and responsibilities for the interests of the state as a distinct governmental agency. True, he is required as defendant urges, "To audit, settle and adjust the accounts of all collectors of the state revenues and other holders of public money who are required by law to pay the same into the state treasury." Section 84-304, *supra*. To perform this duty would require that he examine the records of the county treasurer of defendant. This examination, however, is one to be made primarily to determine that the state has received the public moneys to

which it is entitled. It is an examination made from the standpoint of the interests of the state. It is made by an official of the state, and is in no wise made by the county. Section 26-1309, Comp. St. Supp. 1941, provides that by direction of and under the supervision of the auditor of public accounts there shall be made a biennial examination of the books, etc., of all county officers and a "complete and comprehensive annual audit" of the books, etc., of the county treasurer and clerks. The time when this examination is to begin is a confidential matter. Clearly it is an examination, when made, conducted by and primarily for the interests of the state. Only a summary of the result of the examination is to be placed on file with the county clerk. This summary, including "suggestions" as to how the office "should be conducted," appears to be the only report which the legislature contemplated the county should receive. Comp. St. Supp. 1941, sec. 26-1311.

We conclude that the legislature has not directly nor by implication by the acts cited taken from the counties the power of examination of their own records, nor placed the power to make a comprehensive examination, audit or investigation of county officials, or the county treasurer's office, exclusively in the auditor of public accounts.

Section 26-1101, Comp. St. Supp. 1941, provides for the office of county comptroller in defendant county. His duties are outlined in that section and sections 26-1102 to 26-1104, Comp. St. 1929. The statute specifically provides that the comptroller shall "examine and check the reports of all officers of the county." Certainly an examination of the "reports" of county officers would not embrace a complete audit, examination or investigation of a county official's doings and records. Other duties are defined in the statute. At no place do we find specific requirements that the county comptroller make an audit or examination of the scope and for the purpose of the one here undertaken. Without undertaking to define the outside limits of the duties of the county comptroller, it is patent that the legislature did not place upon that official the duty of making the examination

for the defendant's board, which they and the grand jury deemed necessary in the public interest.

We do not find in the acts cited any authority vesting in the county board any power to require of either named official that they make such an examination as defendant's board here determined to have made, nor do we find any direction to those officials to comply with such a request if made.

It is to be noted that section 26-1104, *supra*, provides, "that no duty required to be performed or power exercised shall be taken from any county official which shall be necessary for the proper performance of any duty required by law, of such official which is not hereby made the *special duty* of the county comptroller." It is further to be noted that the legislature in 1941 (Laws 1941, ch. 48, sec. 2) reenacted the provisions of section 26-105, hereinbefore quoted, with reference to the power of county boards. This re-enactment is subsequent to the enactment of the provisions defining the duties of the auditor of public accounts and the county comptroller.

We conclude that the services which the defendant employed the plaintiff to perform are not those which the legislature has required to be performed by either the state auditor or the county comptroller, that the defendant is not limited to the use of those means and agencies in securing the examination it determined to have made, and that the contract is not void for the reasons advanced.

Defendant next contends that by the contract the board undertook to charge the 1942 revenues with the payment of $7,500 before the budget for that year had been adopted, and before an appropriation for that year had been made, and that accordingly the contract was void.

Defendant bases this contention upon the provisions of section 26-116, Comp. St. 1929, and sections 26-2107 and 26-2109, Comp. St. Supp. 1941. The argument of the county is predicated upon the fact that the county, in addition to the sums available, contracted to include in its budget and to appropriate sufficient additional funds in 1942 to pay whatever might be earned and payable in 1942.

It is to be remembered that the board of commissioners were not personally qualified to make this examination; that under the contract the plaintiff agreed to make the investigation and verification of the records on a per diem basis; that the defendant was to pay only for such services as rendered with a maximum limit of $10,000; that $2,500 was to be due and payable out of moneys then available and appropriated; that sufficient funds to pay the amount of the claims in suit had been appropriated, was and remained available and ear-marked for the payment of these claims when they were filed; that the claims filed were for services rendered and in an amount within the budgeted available funds; that the demurrer admits that the claims represent not only the agreed but also the fair and reasonable value of the services rendered, and that the defendant received, accepted and retained the report compiled as a result of the services represented by the claims.

The defendant, under the circumstances here shown, is liable for the reasonable value of the services, the benefits of which it has received and retained. See *Omaha Road Equipment Co. v. Thurston County*, 122 Neb. 35, 238 N. W. 919; *Scheschy v. Binkley*, 124 Neb. 87, 245 N. W. 267; *Western Chemical Co. v. Board of County Commissioners*, 130 Neb. 550, 264 N. W. 699; *Sorensen v. Chimney Rock Public Power District*, 138 Neb. 350, 293 N. W. 121; *Darnell v. City of Broken Bow*, 139 Neb. 844, 299 N. W. 274.

The demurrer should have been overruled. The judgment of the district court is reversed and the cause remanded.

REVERSED.

Rose and Eberly, JJ., not participating.